IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JUSTIN PENNINGTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:23-cv-455 |
| | § | |
| WC APA, LLC, | § | JURY TRIAL REQUESTED |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

Plaintiff Justin Pennington brings this suit against the above-named Defendant under 26 U.S.C. § 7434, *et seq.*, as amended. For cause of action, he respectfully shows as follows:

### INTRODUCTION

1. Defendant WC APA, LLC ("APA") is a temporary staffing company located in Fort Worth, Texas that specializes in supplying staffing to the aviation industry. APA employed Plaintiff Justin Pennington ("Plaintiff" or "Pennington") as an avionics technician from October 5, 2020 through August 29, 2021. During his employment, APA purposefully, willfully and knowingly inflated the income reflected on Pennington's 2021 W2. Because Pennington was receiving social security benefits, APA's overinflation of Pennington's 2021 income caused Pennington to exceed social security's cap on allowable earned income, which caused the Social Security Administration to require Pennington to repay $9,472.00 in social security benefits that he had previously received.

2. Pennington alerted APA to its overpayment on numerous occasions, and even hired a former IRS agent and later a tax attorney to bring this fact to APA's attention, but APA steadfastly refused to modify Pennington's W2 to reflect his actual income. Because of APA's intransigence, Pennington must now repay the Social Security Administration $9,472.00. Because an APA employee explained to Plaintiff that APA had misreported the income of other employees as well, Pennington brings this suit to compel APA to report the correct amount of wages he earned for the 2021 tax year, to compel APA to correct the W-2's of all other employees who have had their wages overinflated on their W-2's, and to recover damages for APA's overinflation of his wages.

## PARTIES

3. Justin Pennington is a resident of the State of Kansas, and was employed by Defendant APA.

4. Plaintiff and similarly situated employees were employed by APA and were deployed at various aviation related businesses across the United States.

5. Defendant WC APA, LLC is a domestic limited liability company headquartered in Fort Worth, Texas that employed Plaintiff. Defendant can be served by serving its registered agent for service of process and President, Danny McKee, at 4150 International Plaza, Suite 510, Fort Worth, Texas 76109.

6. Defendant WC APA, LLC was an employer of Plaintiff and the Class Members.

## JURISDICTION AND VENUE

7. The jurisdiction of this Court is invoked due to the asserted violation of a federal statute and pursuant to 28 U.S.C. § 1331.

8		Venue is appropriate in this jurisdiction because the unlawful events occurred in this district.

## FACTS

9.	APA provides staffing to the aviation industry. In October 2020, APA assigned Pennington to work as an avionics technician for Ascent Aviation, located in Marana, Arizona. While Pennington performed work for Ascent, APA paid Pennington an hourly, taxable wage of $12.00 an hour.

10.	As part of its compensation package, APA provides per diem payments to its employees that work away from their homes, such as Pennington. Payments received as per diems are not considered taxable income, as they are considered to be expense reimbursements. As such, per diems should not be reflected under "earned income" on an employee's W-2, and employees are not required to pay taxes on per diems.

11.	For the period of 2021 at Ascent, Pennington earned a total of $18,630.40 in wages from APA. However, on the W-2 it issued for 2021, APA reported all of Pennington's per diems as earned income, which made his 2021 W-2 state that he had earned $31,968.00 in wages, a difference of $13,337.60.

12.	APA is on an "accountable plan", which is defined as a plan that follows the Internal Revenue Service regulations for reimbursing workers for business expenses in which reimbursement is not counted as taxable income. This means that reimbursements are not subject to withholding taxes or form W-2 reporting.

13.	Before beginning his assignment for Ascent, Pennington complied with APA's Expense Reimbursement Policy by submitting the required Tax Home Declaration and the

Lodging Representation Forms to APA. APA thereafter waived the requirement for Pennington to submit a log showing how many days he worked away from his tax home.

14. While at Ascent, Pennington clocked his hours on a daily basis through Ascent's electronic time clock. Ascent's timekeeping system then reported Pennington's hours to APA on a weekly basis, so that APA could calculate Pennington's taxable earnings. APA would then pay Pennington on a weekly basis.

15. As such, APA knew the number of days Pennington worked away from his home, the location in which he worked and the business purpose underlying his time away from his home, i.e., to perform work at Ascent Aviation in Arizona.

16. In addition to the increased taxable income on Pennington's 2021 income tax return, Pennington also had to pay additional tax on his social security benefits. Most importantly, as a result of APA's fraudulent reporting of more income than he received by reporting Pennington's per diem as earned income, Pennington was forced to repay $9,472.00 of social security benefits he had previously received, as his falsely inflated income put him over the maximum allowable earned income for a Social Security recipient.

17. Defendant issued Plaintiff a fraudulent W-2 for payments received in 2021. The W-2 that Defendant issued Plaintiff did not accurately reflect the true amount of W-2 pay Plaintiff received from Defendant in 2021. Defendant knew this when it issued the W-2. Even if Defendant did not know this fact at the time it issued the W-2, it was subsequently made aware of this fact on multiple occasions, both verbally and in writing.

18. Upon information and belief, Defendant caused the W-2s of a number of its employees to reflect more income than these employees actually earned or received.

19. Upon information and belief, Defendant credited per diems provided to its employees as earned income.

20. Defendant engaged in the conduct described above willfully, and purposefully mispresented the amounts of wages earned by Plaintiff and the Class Members on their W-2s for at least the year 2021.

## VIOLATIONS OF THE LAW

## COUNT I – WILLFUL VIOLATIONS OF 26 U.S.C. § 7434

21. All allegations of the Complaint are expressly incorporated herein.

22. Defendant was responsible for submitting accurate information on its returns for Plaintiff to the IRS.

23. Defendant willfully and knowingly filed a false and fraudulent W-2 that overreported Plaintiff's earned wages.

23. Plaintiff sues for redress under 26 U.S.C. § 7434.

## CLASS ACTION FOR WILLFUL AND
## FRAUDULENT TAX FILINGS UNDER COUNT I

26. All allegations of the Complaint are expressly incorporated herein.

27. Plaintiff seeks class action status for similarly situated employees who:

   A) worked for Defendant at any time during the 6 years before the filing of this lawsuit;

   B) received fraudulently inflated W-2's as a result of the inclusion of per diem payments reported as earned income or for any other reason;

   C) were subject to intentional and knowing false wage statements by Defendant through filings of fraudulent W-2s.

28. Upon information and belief, the class is so numerous that joinder of all members is impracticable because the number of workers exceeds 50.

29. Upon information and belief, the class is geographically diverse across the United States such that it makes joinder impracticable.

30. A class action is a superior method of resolving this litigation because Defendant's workers are numerous and unknown to Plaintiff but easily identifiable through Defendant's records.

31. Questions of law or fact are common to the class, including the core claim that each employee was fraudulently reported to the IRS as having earned more wages than they actually earned, whether because per diem payments were included in earned income or for any other reason.

32. These core common facts are operative facts for determining claims and defenses, and predominate over any inconsequential differences in pay rates, location, and/or job titles are details that do not change the claims or defenses.

33. Claims and defenses of the representative parties are typical of the claims or defenses of the class because Defendant subjected all employees to the same illegal pay policies and, upon information and belief, continues to do so through the present date.

34. The representative Plaintiff will fairly and adequately protect the interests of the class because the Plaintiff is similarly situated to the class and has identical claims and burdens of proof as the class.

35. Plaintiff's litigation will further class interests.

36. A class action furthers judicial economy because Plaintiff's claims and class claims require the same proof and elicit the same defenses.

37. A class action reduces the risk of an unjust result to nearly identical claims due to the vagaries of litigation.

38. A class action permits a unified discovery and reduces burdensome duplicate discovery and discovery disputes.

39. The class action applies to Count I of Plaintiff's Complaint, and incorporates all remedies sought under Count I and any other remedy the Court deems just.

40. Plaintiff demands a trial by jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that, pursuant to 26 U.S.C. § 7434(b), Plaintiff be awarded the greater of $5,000 or the sum of Plaintiff's actual damages, as well as his attorney's fees and costs. Plaintiff also prays that that a) this Court certify a class of all other similarly situated employees whose income was fraudulently reported to the IRS during the last 6 years; b) that this Court award judgment against Defendant for the actual damages incurred by the class members or, alternatively, the minimum statutory damages of $5,000 for each false information return sent; c) that this Court award all costs and attorney's fees incurred in prosecuting the class claims; d) that this Court grant leave to add additional Plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court and e) that this Court enter an Order enjoining Defendant from continuing to issue W-2s that overreport income earned as a result of per diems or for any other reason.

Plaintiff seeks all other relief as the Court deems just and equitable.

Respectfully submitted,

WELMAKER LAW, PLLC

/s/ Douglas B. Welmaker
Douglas B. Welmaker
Attorney-in-Charge
State Bar No. 00788641
Welmaker Law, PLLC
409 N. Fredonia, Suite 118
Longview, Texas 75601
Phone: (512) 799-2048
Email: doug@welmakerlaw.com

THE BUENKER LAW FIRM

Josef F. Buenker
TBA No. 03316860
P.O. Box 10099
Houston, Texas 77206
713-868-3388 Telephone
713-683-9940 Facsimile
jbuenker@buenkerlaw.com

**ATTORNEYS FOR PLAINTIFF**